

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 30, 2017

**BY ECF AND FACSIMILE**
Honorable Laura Taylor Swain
United States District Judge
500 Pearl Street
New York, New York 10007

    Re: *United States* v. *Robert DeBello, et al.*, S8 15 Cr. 491 (LTS)

Dear Judge Swain:

    In advance of the status conference scheduled for June 1, 2017 in this case, the Government respectfully submits this letter to provide Your Honor with: (a) a summary of the changes made by the above-referenced Superseding Indictment numbered S8 15 Cr. 491 (LTS) (the "S8 Indictment"), which was returned by a Grand Jury in this District last week; (b) an update on the status of discovery in this case; (c) a proposal from the Government for dividing the defendants into two groups for trial; and (d) a proposed timetable for the case going forward. The defendants have not yet been arraigned on the S8 Indictment, and thus should be arraigned on the S8 Indictment at the June 1 status conference unless the Court prefers to have them arraigned at a different time.

### I. The S8 Indictment

    As the Court is aware, the Government on May 12, 2016 unsealed a prior indictment, numbered S4 15 Cr. 491 (LTS) (the "S4 Indictment"), which charged a total of eighteen defendants with various crimes as a result of a multi-year investigation of racketeering activities by members and associates of the Genovese Organized Crime Family of La Cosa Nostra. The S4 Indictment charged four members and associates of the Genovese Family — namely, Genovese soldiers Robert DeBello and Steven Pastore, and Genovese associates Ryan Ellis and Salvatore Delligatti — with participating in a conspiracy to conduct the affairs of the Genovese Family through a pattern of racketeering activity. The S4 Indictment also charged various of those racketeering defendants with involvement in a murder conspiracy, an attempted murder, and an extortion conspiracy, and an illegal gambling operation (the "Gambling Operation") relating to their participation in the criminal affairs of the Genovese Family, and with firearms offenses. With respect to the remaining fourteen defendants, the S4 Indictment charged various of them with involvement (along with Delligatti) in a murder-for-hire conspiracy, participation in the illegal Gambling Operation, and firearms offenses. Since the unsealing of the S4 Indictment, five of the defendants have pleaded guilty under plea agreements with the Government, and two of them have been sentenced by the Court.

Last week, a Grand Jury in this District returned a superseding indictment, namely the S8 Indictment, against the remaining thirteen defendants in this case. The S8 Indictment makes the following changes:

- The S8 Indictment adds Luigi Caminiti as a defendant named in the charged racketeering conspiracy count. As noted, the prior S4 Indictment charged a total of four defendants (namely, Genovese Family soldiers DeBello and Pastore and Genovese Family associates Ellis and Delligatti) with racketeering conspiracy, and charged them and numerous other defendants (including Caminiti) with participation in the illegal Gambling Operation, which was run and protected by the Genovese Family. The S8 Indictment brings the total number of defendants charged in the racketeering conspiracy count to five by adding Caminiti as one of the defendants charged in that count.

- The S8 Indictment charges several crimes as overt acts listed in the racketeering conspiracy count. Specifically, the S8 Indictment adds overt act language in the racketeering conspiracy count charging: (a) DeBello, Ellis, and Delligatti with conspiring to extort a nightclub; (b) Ellis and Caminiti with conspiring to commit an assault; and (c) DeBello and Ellis with participating in efforts to collect unlawful debts arising from usurious loans.

- The S8 Indictment also adds non-racketeering charges against Bertram Duke, an existing defendant. The prior S4 Indictment charged Bertram Duke with participation in a conspiracy to commit murder for hire, and a related firearms offense. The S8 Indictment adds a misprision of a felony count against him based on his efforts, after that murder conspiracy was foiled, to help his brother, one of the hitmen hired to carry out the murder, evade capture and prosecution.

- The S8 Indictment removes references to the five defendants who have pleaded guilty in this case.

## II. The Status of Rule 16 Discovery

### A. The Prior Discovery Productions

In advance of the status conference before the Court on January 20, 2017 in this matter, the Government produced three phases of Rule 16 discovery materials in the Government's possession that are common to all defendants, and the Government provided a summary of the contents of those productions in its January 19, 2017 letter (Dckt. 260) to the Court.[1] As explained in the Government's January 19 letter, the Government provided hard drives containing the materials in those productions to Julie de Almeida, Esq., who has been appointed by the Court to serve as the coordinating discovery attorney for the defense in this case (the "Discovery Coordinator"), and the Government understands that she has made those materials available to defense counsel. In addition,

---

[1] The Government also provided individual discovery materials, including each defendant's criminal history, arrest records, and any relevant post-arrest statements, directly to counsel of record for each defendant.

as explained in the Government's January 19 letter, the Government also provided hard drives containing copies of those discovery productions to the Bureau of Prisons' Metropolitan Correctional Center ("MCC") and Metropolitan Detention Center ("MDC") so that the defendants housed at those detention facilities could have direct access to the discovery in the relevant facility's law library.

Since the January 20 status conference before the Court, the Government has worked with the Discovery Coordinator in this case to resolve the issues raised by various defense counsel concerning the aforementioned discovery productions that were discussed in the Government's January 19 letter to the Court and on the record at the January 20 status conference before the Court. By way of background, prior to the January 20 status conference, the Discovery Coordinator informed the Government of issues raised by various defense counsel concerning the discovery produced to date, consisting primarily of issues falling into two broad categories: (1) determining how to locate, in the collection of audio recordings of intercepted calls that have been produced, particular recordings referenced in draft linesheets provided by the Government summarizing such audio recordings; and (2) sorting out technical issues with regard to electronic files containing video surveillance footage produced in the discovery that the Discovery Coordinator had difficulty accessing.

With respect to the first discovery issue, the Government understands that the issue has been resolved. More specifically, following the January 20 status conference, the Government and one of the case investigators on this matter went on January 25, 2017 to the electronic surveillance equipment room of the Nassau County Police Department ("NCPD") in Mineola, New York, met with an NCPD Electronics Squad Detective with familiarity on the wiretap surveillance used in the investigation of this case that resulted in the intercepts calls and draft linesheets that were produced in discovery, and participated in a conference call between the Discovery Coordinator, the Electronics Squad Detective, and the Government. During the call, the Government reported information received by the Electronic Squad Detective that the Government understands addresses the questions raised by the defense and the Discovery Coordinator about the collection of audio recordings of intercepted calls that have been produced by the Government, and how they correspond with the draft linesheets provided by the Government summarizing such audio recordings.

As the Government was informed by the Electronic Squad Detective and reported to the Discovery Coordinator during that call, the draft linesheets that were produced in discovery in this case were generated by an automated computer program used by NCPD during the investigation of this case to analyze data from and manage various forms of electronic surveillance that were used during the investigation on various telephone numbers, including, for example, call detail data resulting from judicially authorized pen registers on various telephone numbers as well as data resulting from judicially authorized wiretap surveillance on various telephone numbers. With respect to telephone numbers for which the program received data, a wide array of activities by such telephone numbers was logged by the program. For example, if non-content data concerning a telephone call was received by the program as a result of a pen register on a particular telephone number, the draft linesheets generated by the program and produced by the Government in discovery reflect a reference number for the call, the target telephone number for which data was received by the program, the date and time of the call, the direction of the call (incoming versus outgoing), and the duration of the call, among other information. In contrast, if data concerning a

telephone call was received by the program as a result of wiretap surveillance on a particular telephone number, the draft linesheets generated by the program and produced by the Government in discovery reflect both a reference number for the call as well as an audio file number (corresponding to an audio file number assigned to the audio recording of the intercepted call that was produced by the Government), a synopsis of the call if one was drafted by the reviewing law enforcement official, the target telephone number for which data was received by the program, the date and time of the call, the direction of the call (incoming versus outgoing), and the duration of the call, among other information. Accordingly, the audio file numbers listed in the draft linesheets that have been produced in discovery correspond to the audio file numbers assigned to the audio recordings of intercepted calls that have been produced in discovery.

With respect to the second discovery issue referenced above, following the January 20 status conference, the Government had a paralegal assigned to prosecution team review the Government's copies of the electronic surveillance video files that the Discovery Coordinator had difficulty accessing. From this review, which took a number of hours over the course of about a week, and several telephone calls between the reviewing paralegal and the Discovery Coordinator, it was determined that the virtually all of the Government's copies of the files were in working order, and that the versions of the files received by the Discovery Coordinator somehow lost their accessibility either in the process of being copied for production or received by the Discovery Coordinator. In order to remedy this issue, the Government offered to reproduce the files upon receipt of a 500-gigabyte hard drive from the Discovery Coordinator, and the Government is awaiting receipt of such a drive, which is expected to arrive this week. Upon receipt of this drive, the Government will promptly load the files onto the drive and transmit it to the Discovery Coordinator.[2]

### B. The Recent Supplemental Discovery Production

In addition to the foregoing, the Government on May 25, 2017 sent a disc to the Discovery Coordinator providing a supplemental discovery production of materials common to all of the defendants for distribution to defense counsel, and is in the process of producing discs with copies of this production to the MCC and MDC for the defendants jailed at those facilities. This supplemental production, which contains a relatively small amount of information in comparision with the Government's previous productions, consisting of the following:

1. A search warrant and related warrant application materials for a warrant authorizing searches of several cellphones seized in connection with the arrests of defendants Robert DeBello, Salvatore Delligatti, Luigi Romano, Bertram Duke, Spyro Antonokopoulos, Michael Vigorito, Mick Sokol, and Jonathan DeSimone.

---

[2] In producing individual discovery materials to defendant Robert DeBello, the Government previously provided to him and his counsel a collection of materials recovered from one of his cellphones pursuant to a search warrant. Because the Government has decided that these materials should be made produced as common discovery materials to the other defendants as well, the Government has notified the Discovery Coordinator that the Government will also be loading onto the aforementioned drive a copy of these DeBello cellphone materials, for the Discovery Coordinator to distribute to defense counsel for all the defendants.

2. A search warrant and related warrant application materials for a box belonging to defendant Salvatore Delligatti in which law enforcement recovered a firearm.

3. Video surveillance footage from a JP Morgan Chase bank on January 12, 2015 showing Scott Jacobson and Steven Pastore.

4. Progress reports (numbered nine and ten) related to the wiretap surveillance materials that were previously produced by the Government.

5. Cellphone subscriber and other phone records received by law enforcement in response to subpoenas issues by the Nassau County District Attorney's Office.

6. Location tracking information for several vehicles (namely, an Acura bearing license plate number BQUC72, a Chrysler bearing license plate number GBC7806, a Mercedes-Benz bearing license plate number FXB7839, and a Honda bearing license plate number DZT2755).

7. Call detail records for the telephones assigned call numbers 718-614-6330 (used primarily by defendant Michael Karnback), 718-640-8426 (used primarily by defendant Luigi Caminiti), and 718-637-3331 (used primarily by defendant Robert DeBello).

8. Bank records relating to a joint bank account of Bertram Duke and Kelvin Duke.

The Government recognizes that its discovery obligations are ongoing. The Government expects that, as it continues to investigate the defendants in this case, and the charged racketeering conspiracy more generally, it will obtain possession of other material that may be discoverable under Rule 16. To the extent the Government comes into possession of other material that is discoverable under Rule 16, it will produce it as soon as practicable as well.

### III. Proposed Groupings of Defendants for Trial

The Government respectfully proposes that the thirteen remaining defendants in this case be divided into two groups for trial, as follows:

- **Group One.** The five defendants who face various charges stemming from a plot to commit a murder that was foiled by law enforcement — namely, defendants Robert DeBello, Ryan Ellis, Salvatore Delligatti, Luigi Romano, and Bertram Duke — be grouped for trial ("Group One").

- **Group Two.** The other eight defendants who face various charges stemming from their involvement in the illegal Gambling Operation — namely, Steven Pastore, Luigi Caminiti, Scott Jacobson, Frank Celso, Mick Sokol, Spyro Antonakopoulos, Michael Karnbach, and Jonathan DeSimone — be grouped for trial ("Group Two").

## IV. The Government's Proposed Schedule for the Case

The Government is prepared to proceed on any schedule set by the Court. While the Court has not yet decided which of the defendants will be grouped together for trial, on the assumption that the defendants would be divided into two groups for trial, the Court scheduled the trial for the first trial group to begin on February 5, 2018, and has not yet set a trial date for the second trial group. The Government currently estimates that each of the trials will last approximately two months.[3] Bearing the foregoing considerations in mind, the Government respectfully proposes the following regarding the schedule going forward in this case:

### *Schedule as to Trial Groupings*

- A deadline of June 9, 2017 for the defendants to submit any objections to the Government's proposed trial groupings (other than objections based on requests for severance, which should be addressed in severance motions to be filed at a later time as set forth below), and a deadline of June 16, 2017 for any reply from the Government.

### *Schedule as to First Trial*

- A deadline of September 8, 2017 for any pre-trial motions (including any severance motions) for the first trial group of defendants, a deadline of October 6, 2017 for any opposition from the Government, and a deadline of October 13, 2017 for any replies by any of the moving defendants.

- A deadline of November 17, 2017 for the Government to provide an enterprise letter to the first trial group of defendants providing notice of the criminal incidents that the Government may seek to prove at trial as direct proof of and/or background to the charged racketeering conspiracy, or as evidence pursuant to Federal Rule of Evidence 404(b).

- A deadline of December 15, 2017 for any *in limine* motions for the first trial, and a deadline of December 22, 2017 for any opposition submissions.

- A deadline of January 5, 2018 for any requests to charge and proposed voir dire questions for the first trial, and a deadline of January 12, 2018 for any objections to such requests to charge or proposed voir dire questions.

- As noted, the Court has already scheduled trial for the first group of trial defendants to begin on February 5, 2018.

---

[3] Although there are thirteen remaining defendants in the case at this juncture, the Government expects that several of them will plead guilty, and thus two trial groups will be sufficient to accommodate the defendants in this case. If it turns out that all thirteen of the remaining defendants wish to proceed to trial, then more than two trials will be needed to resolve this case.

### *Schedule as to Second Trial*

- A deadline approximately eight week before the second trial for the Government to provide an enterprise letter to the second trial group of defendants providing notice of the criminal incidents that the Government may seek to prove at trial as direct proof of and/or background to the charged racketeering conspiracy, or as evidence pursuant to Federal Rule of Evidence 404(b).

- A deadline approximately six weeks before trial for any *in limine* motions for the second trial, with a deadline a week later for any opposition submissions.

- A deadline approximately five weeks before trial for any requests to charge and proposed voir dire questions for the second trial, with a deadline a week later for any objections to such requests to charge or proposed voir dire questions.

- A trial for the second group of trial defendants to begin on a date to be determined by the Court.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

by: _____/s_____
Samson Enzer / Jordan Estes / Jessica Feinstein
Assistant United States Attorneys
(212) 637-2342 / -2543 / -1946

cc: All defense counsel of record